JOSEPH H. HARRINGTON
United States Attorney
BRIAN M. DONOVAN
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA

                Plaintiff,

   v.

ALEX JOSEPH CAMPBELL;
TAMPICO STORE AND CAFÉ;
TAMPICO WELL USERS;

                Defendants.

Cause No. 1:18-cv-3062-

**COMPLAINT**

The United States of America, on behalf of the Farm Service Agency, United States Department of Agriculture ("FSA"), alleges as follows:

1.      This action is brought to collect amounts owed to the United States of America.  Jurisdiction exists pursuant to 28 U.S.C. § 1345.

2.      On or about June 25, 2013, Defendant Alex Joseph Campbell (Defendant Campbell), a single man, executed and delivered to FSA a promissory note in the amount of $177,500.00.  A copy of this note is attached as Exhibit A.

3.      On or about June 25, 2013, Defendant Campbell executed and delivered to FSA a promissory note in the amount of $18,350.00.  A copy of this note is attached as Exhibit B.

COMPLAINT - 1

4.      On or about June 25, 2013, for the purpose of securing payment of the promissory notes described in paragraphs 2 and 3, Defendant Campbell executed and delivered to FSA a real estate mortgage describing certain real property he owns in Yakima County, Washington.  A copy of this mortgage is attached as Exhibit C-1. This mortgage was recorded June 26, 2013, as Auditor's File No. 7808421, Official Records of Yakima County, Washington.  This mortgage exists of record as a lien upon the real property described therein.   In addition, FSA perfected its interest in fixtures on this real property by recording a UCC-1 on June 26, 2013, as Auditor's File No. 7808422, Official Records of Yakima County, Washington.  A copy of this UCC-1 is attached as Exhibit C-2.

5.      To further secure the payment of the promissory notes described in paragraphs 2 and 3, Defendant Campbell executed and delivered to FSA security agreements dated September 1, 2003, and August 28, 2013, describing crops, livestock, supplies, farm products and other equipment.  Copies of these security agreements are attached as Exhibits D and E.  The interests created by these security agreements were perfected by a financing statement filed September 3, 2003, as Instrument No. 2003-246-4340-6; a continuation statement filed March 4, 2008, as Instrument No 2008-064-2117-1; and a continuation statement filed June 24, 2013, as Instrument No. 2013-175-0432-2; in the Official Records of Washington State Department of Licensing.  Copies of the financing statement and continuation statements are attached as Exhibit F-1, F-2, and F-3.   In addition, FSA's interest in

COMPLAINT - 2

titled vehicles was perfected by notation on the Vehicle Certificate of Ownership for a

1978 Turnbow Trailer and 1983 GMC truck.  Copies of these Certificates of

Ownership are attached as Exhibits G and H.

6.    As a result of the security agreements and perfection documents

described in paragraph 5, FSA has a perfected security interest in the following

described equipment located in the State of Washington:

Oliver 1600 Tractor, S/N 130322-607 9433
New Holland 425 Baler, S/N 503847
John Deere BA Grain Drill, S/N 60090
Hesston 6650 Swather, S/N 665-01251
Ford 3000 Tractor, S/N C461309
John Deere 14' Cultipacker
Massey Ferguson M-25 Hay Rake S/N 0006150
International 3BTM Plow
Powder River Calf Squeeze Chute, 2011
Pasture Harrows (4 Count) 5'
International 10' Disc
Turnbow 16' Stock Trailer, S/N D535TUD
GMC Truck 2500, 1983, S/N 1GTCK24J3DF711833

7.    Defendant Campbell is delinquent in the payment of his indebtedness.  In

accordance with the provisions of the promissory notes, mortgage and security

agreements described in paragraphs 2 through 5, and after taking all actions required

under applicable regulations, FSA declared the entire indebtedness to be immediately

due and payable, and notified Defendant Campbell by letters sent March 7, 2017, by

certified and regular mail.  Copies of these letters are attached as Exhibit I.

8.    There is now owing from Defendant Campbell the sum of $199,679.82,

consisting of $185,238.99 principal and $14,440.83 interest accrued through April 10,

2018.  Interest continues to accrue thereafter at the daily rate of $15.5961.

COMPLAINT - 3

9.    Defendant Tampico Store & Café claims an interest in personal property and general intangibles located on the real property in Yakima County, Washington, owned by Defendant Campbell by reason of a lien recorded September 2, 2015, as File No. 2015-245-9316-4, Official Records of Washington State Department of Licensing.

10.    Tampico Well Users claims liens recorded December 1, 2016, as Auditor's File No. 7929880 and July 14, 2017, as Auditor's File No. 7951348, Official Records of Yakima County, Washington, against the real property described in the mortgage alleged in paragraph 4 and held by FSA.  These claims of lien still exist of record as a lien upon the real property described therein.

10.     FSA does not seek to collect from Defendant Campbell personally as he obtained a discharge of such liability in a Chapter 7 bankruptcy case, In re Campbell, Case No. 16-00196, United States Bankruptcy Court for the Eastern District of Washington.

11.    The interests of all Defendants are inferior to the interest of the Plaintiff.

WHEREFORE, Plaintiff United States of America requests judgment against Defendants as follows:

1.    Against Defendant Alex Joseph Campbell in the amount of $199,679.82 ($185,238.99 principal and $14,440.83) plus interest to accrue at the rate of $15.5961 per day from and after April 10, 2018, to the date of judgment; plus interest from the date of judgment at the legal rate until paid in full, for costs of suit, including, but not

COMPLAINT - 4

limited to the filing fee allowed pursuant to 28 USC § 2412(a)(2) any costs of enforcing the judgment, any costs incurred by FSA to bid at any foreclosure sale, including but not limited to costs of title work and appraisals, and any other proper relief.

2.    Adjudging and decreeing the amount of this judgment to be a first lien upon the real property described in the mortgage executed by Defendant Campbell and given to Plaintiff, and a first lien on the personal property described in the security agreements executed by Defendant Campbell.

3.    Directing that the mortgage be foreclosed and the real property described in the mortgage be sold by the United States Marshal for the Eastern District of Washington in the manner provided by law; that the parties hereto be allowed to bid at the foreclosure sale; that the United States of America be allowed to bid all or part of its judgment at such sale; that the purchaser at said sale shall be issued a Certificate of Sale of Real Property and be immediately let into possession of said real property; and that at the termination of the redemption period the Marshal issue his Deed to the purchaser;  and that the personal property described in the security agreements be sold by the United States Marshal for the Eastern District of Washington in the manner provided by law; and that the parties hereto be allowed to bid at the foreclosure sale; that the United States of America be allowed to bid all or part of its judgment at such sale; that the purchaser at the sale of the personal property shall be issued a Bill of Sale and be immediately granted possession of said personal property.

COMPLAINT - 5

4.     Directing that the proceeds realized from the sale of the real and personal property be applied as follows:  First, in payment of attorneys' fees, costs, and expenses of this suit; and second in payment of Plaintiff's judgment.

5.     Decreeing that the Defendants and all persons claiming by, through or under them, be forever barred and foreclosed from asserting any title or interest in and to the real and personal property owned by Defendant Campbell, except the right of redemption provided by applicable law. And,

6.     Such other and further relief as the court may deem just and equitable.

RESPECTFULLY SUBMITTED:   April 18, 2018.

JOSEPH H. HARRINGTON
United States Attorney


s/Brian M. Donovan
BRIAN M. DONOVAN
Assistant United States Attorney
Attorneys for Plaintiff United States

COMPLAINT - 6

# EXHIBIT A

This form is available electronically.

THIS DOCUMENT IS CERTI-
FIED TO BE A TRUE AND
CORRECT COPY OF THE
ORIGINAL DOCUMENT.
BY: _____

Form Approved (OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

| FSA-2026 | U.S. DEPARTMENT OF AGRICULTURE | | Position 2 |
|---|---|---|---|
| (12-05-12) | Farm Service Agency | | |

## PROMISSORY NOTE

| 1. Name | 2. State | 3. County |
|---|---|---|
| Alex Joseph Campbell | Washington | Yakima |

| 4. Case Number | 5. Fund Code | 6. Loan Number | 7. Date |
|---|---|---|---|
| ▓▓▓▓▓▓▓ | 41 | 06 | June 25, 2013 |

| 8. TYPE OF ASSISTANCE | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|
| FO-BF-Regular | ☒ Initial loan   ☐ Conservation easement   ☐ Deferred payments |
| | ☐ Consolidation   ☐ Rescheduling   ☐ Debt write down |
| | ☐ Subsequent loan   ☐ Reamortization |

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* Yakima, Washington or at such other place as the Government may later designate in writing, the principal sum of *(b)* One Hundred Seventy-seven Thousand Five Hundred and no/100 dollars *(c)* ($ 177,500.00 , plus interest on the unpaid principal balance at the RATE of *(d)* Three and one-eighth percent *(e)* 3.125 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* -40- installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 7,836.00 | 6/25/2014 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and *(d)* $ 7,836.00 thereafter on the *(e)* 25th of June of each *(f)* year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* -40- years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial _ASC_ Date _06/25/13_

COPY

**Complaint - Exhibit A**
**Page 1 of 3**

8

FSA-2026 (12-05-12)                                                                    Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _AJC_    Date _06/25/13_

**Complaint - Exhibit A**
**Page 2 of 3**

9

FSA-2026 (12-05-12)

Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

_Alex Joseph Campbell_
ALEX JOSEPH CAMPBELL

5808 Summitview Avenue, Ste A, PMB #244
Yakima, Washington 98908

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

**Complaint - Exhibit A**
**Page 3 of 3**

# EXHIBIT B

THIS DOCUMENT IS CERTI
FIED TO BE A TRUE AND
CORRECT COPY OF THE
ORIGINAL DOCUMENT.
by: FK

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

| FSA-2026 | U.S. DEPARTMENT OF AGRICULTURE | Position 2 |
|---|---|---|
| (12-05-12) | Farm Service Agency | |

### PROMISSORY NOTE

| 1. Name <br> Alex Joseph Campbell | 2. State <br> Washington | 3. County <br> Yakima |
|---|---|---|
| 4. Case Number ■■■■■■ | 5. Fund Code <br> 44 | 6. Loan Number <br> 05 | 7. Date <br> June 25, 2013 |

| 8. TYPE OF ASSISTANCE | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|
| OL-BF-Regular-7year | ☒ Initial loan  ☐ Conservation easement  ☐ Deferred payments <br> ☐ Consolidation  ☐ Rescheduling  ☐ Debt write down <br> ☐ Subsequent loan  ☐ Reamortization |

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*   Yakima, Washington   or at such other place as the Government may later designate in writing, the principal sum of *(b)*   Eighteen Thousand Three Hundred Fifty and no/100  _____ dollars *(c)* ($   18,350.00  _____, plus interest on the unpaid principal balance at the RATE of *(d)*   One and one-eighth  _____ percent *(e)*   1.125   %) per annum.  If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address.  The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*   –7–   installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 2,741.00 | 6/25/2014 | $ 2,741.00 | 6/25/2015 |
| $ 2,741.00 | 6/25/2016 | $ 2,741.00 | 6/25/2017 |
| $ 2,741.00 | 6/25/2018 | $ 2,741.00 | 6/25/2019 |
| $ 2,741.00 | 6/25/2020 | $ | |

and *(d)* $   N/A   thereafter on the *(e)*   N/A   of each *(f)*   N/A   until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*   –7–   years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government.  Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial _AJC_   Date _06/25/13_

COPY

FSA-2026 (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _AJC_    Date _06/25/13_

**Complaint - Exhibit B**
**Page 2 of 3**

FSA-2026 (12-05-12)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

*Alex Joseph Campbell*
ALEX JOSEPH CAMPBELL

5808 Summitview Avenue, Ste A, PMB #244
Yakima, Washington   98908

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees.  The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

**Complaint - Exhibit B**
**Page 3 of 3**

# EXHIBIT C-1

```
FILE# 7808421
YAKIMA COUNTY, WA
06/26/2013 11:04:31AM
MORTGAGE
PAGES: 7
SIMPLIFILE                    ✓
FIRST AMERICAN TITLE
Recording Fee: $78.00
```

Farm Service Agency
1606 Perry Street
Yakima, Washington 98902

FSA-2029 WA                    Position 5              Form Approved - OMB No. 0560-0237
(09-17-08)                    *(See Page 6 for Privacy Act and Public Burden Statements.)*

*205/222*

UNITED STATES DEPARTMENT OF AGRICULTURE
Farm Service Agency

## MORTGAGE FOR WASHINGTON

THIS MORTGAGE ("instrument") is made on _____ June 25 _____, 2013 ____ . The mortgagor is
Alex Joseph Campbell **, a single man**
_____ ("Borrower") whose mailing address is _____ 5808 Summitview Ave,
Ste A #244, Yakima, WA   98908 _____ . This instrument is given to the United States of America,
acting through the Farm Service Agency, United States Department of Agriculture ("Government"), located at
1606 Perry Street, Suite A, Yakima, Washington   98902 _____ .
This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements
(collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the
Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 06-25-2013 | $177,500.00 | 3.125% | 06-25-2053 |
| 06-25-2013 | $18,350.00 | 1.125% | 06-25-2020 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the
above note.

This instrument secures to the Government:  (1) payment of the note and all extensions, renewals, and modifications thereof; (2)
recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of
all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set
forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government pursuant to the Consolidation Farm and Rural Development Act, 7 U.S.C.
§ 1921 *et. seq.*, as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following
described property situated in the State of Washington, County or Counties of Yakima .
Assessor's Tax Parcel Numbers: 161217-22401
**Abbreviated Legal Description :** Lot 1 of Short Plat Recorded in Book 82 of Short Plats,
Page 41, Recorded Under Auditor's File No. 2642356, Records of Yakima County,
Washington.

Initial _AJC_   date _06/25/13_                    FSA-2029 WA (09-17-08) Page 1 of 7

```
RECEIVED
JUL  9 2013
YAKIMA COUNTY FSA
```

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1. **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2. **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3. **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by the Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4. **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5. **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in:
(a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6. **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et. seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7. **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this

Initial **AAC**  date **06/25/13**                     FSA-2029 WA (09-17-08) Page 2 of 7

lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.  **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9.  **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10.  **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11.  **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12.  **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13.  **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14.  **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any Federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15.  **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

Initial _AJC_    date _06/25/13_                    FSA-2029 WA (09-17-08) Page 3 of 7

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and  (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law.  Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law.  If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable.  This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.  All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower.  Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing.  If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

Initial ꓘꓥℂ date 0ᴠ|25|13                               FSA-2029 WA (09-17-08) Page 4 of 7

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

As Individuals                                          As Corporation (etc)

_Alex Joseph Campbell_
ALEX JOSEPH CAMPBELL                                    _____
                                                        (name)


_____                                  _____
(name)                                                  (name)


Initial A.J.C.   date 06/25/13                           FSA-2029 WA (09-17-08) Page 5 of 7

**Complaint - Exhibit C**
**Page 5 of 7**

| NOTE: | *The following statements are made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.* |
|  | *According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* |
|  | **RETURN THIS COMPLETED FORM TO YOUR STATE FSA OFFICE.** |

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.*

Initial AJC    date 06/25/13                              FSA-2029 WA (09-17-08) Page 6 of 7

**Complaint - Exhibit C**
**Page 6 of 7**

## ACKNOWLEDGMENT

STATE OF WASHINGTON
COUNTY OF ____YAKIMA_____  } *ss.*    (Individual)

On this _____25th_____ day of ___June, 2013_____ before me personally appeared

___Alex Joseph Campbell_____ , to be known to me to be the same person(s) whose

name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the

instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:

___11-7-16_____

> Notary Public
> State of Washington
> MICHAEL L CHRISTIANSON
> MY COMMISSION EXPIRES
> January 07, 2016

_____
Michael L. Christianson
NOTARY PUBLIC

STATE OF WASHINGTON
COUNTY OF _____  } *ss.*    (Corporation)

The foregoing instrument was acknowledged before me on this _____ day of

_____ , by _____ , President and

_____ , Secretary of _____ , a

_____ corporation, on behalf of the corporation.

My commission expires:

_____                    _____
                                        NOTARY PUBLIC


STATE OF WASHINGTON
COUNTY OF _____  } *ss.*    (Partnership)

The foregoing instrument was acknowledged before me on this _____ day of

_____ , by _____ ,

Partners, on behalf of the _____

, a _____ Partnership.

My commission expires:

_____                    _____
                                        NOTARY PUBLIC


Initial _AJC___ date _06/25/13_                    FSA-2029 WA (09-17-08) Page 7 of 7

# EXHIBIT C-2

FILE# 7808422
YAKIMA COUNTY, WA
06/26/2013 11: 4:31AM
UCC
PAGES: 2
SIMPLIFILE
FIRST AMERICAN TITLE
Recording Fee: $73.

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Sandy Christensen        509-454-5746

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Farm Service Agency
1606 Perry Street, Suite A
Yakima, Washington 98902

2051222

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| Campbell | Alex | Joseph | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5808 Summitview, Ste A, #244 | Yakima | WA | 98908 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names        ☐ NONE

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - insert only one secured party name (3a or 3b)        ☐ NONE

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | | |
| United States of America acting through U.S. Department of Agriculture | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1606 Perry Street, Suite A | Yakima | WA | 98902 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations, and mineral conveyances of record.

Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions. The irrigation system includes, but is not limited to, the following items:

Parcel Numbers: 161217-22401

Abbrev. Legal: LOT 1, SHORT PLAT, BOOK 82, P. 41, YAKIMA COUNTY

RECEIVED
JUL 2 4 2017
YAKIMA

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] — All Debtors | Debtor 1 | Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)    International Association of Commercial Administrators (IACA)

## EXHIBIT A

**LEGAL DESCRIPTION:** Real property in the County of Yakima, State of Washington, described as follows:

**LOT 1 OF SHORT PLAT RECORDED IN BOOK 82 OF SHORT PLATS, PAGE 41, RECORDED UNDER AUDITOR'S FILE NO. 2642356, RECORDS OF YAKIMA COUNTY, WASHINGTON.**

Tax Parcel ID No. 161217-22401

# EXHIBIT D

WSO-0440-04A
(03-25-02)

Position I

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

SECURITY AGREEMENT
(CHATTELS AND CROPS)

**I. THIS SECURITY AGREEMENT,** dated        September 1, 2003        is made between the United States of
                                  *(Date)    (Year)*

America acting through the Farm Service Agency (called Secured Party) and         Alex J. Campbell        and

         0               (called Debtor), whose mailing address is

       17740 Ahtanum Road  Yakima, WA 98903

**II. BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory note(s) or other instrument(s), and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory note(s) or other instrument(s), all of which are called "note", which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor, and

     The note evidences a loan to Debtor, and Secured Party at any time, may assign the note to any extent authorized by the Consolidated Farm and Rural Development Act or any other act administered by the Farm Service Agency and

     It is the purpose and intent of this instrument that this instrument shall secure prompt payment of the note and the timely performance of all obligations and covenants contained in this instrument; and

     **NOW THEREFORE,** in consideration of said loan(s) and (a) to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other act administered by the Farm Service Agency all with interest, (b) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this instrument, and (c) the timely performance of every covenant and agreement of Debtor contained in this instrument or in any supplementary agreement:

     **DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (hereinafter referred to as collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this instrument and the Secured Party's interest therein:

The U.S Department Agriculture (USDA) prohibits discrimination in all its program and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation and marital and family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc) should contact USDA's TARGET Center at (202) 72O-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights Room 326-W Whitten Building, 1400 Independence Avenue, SW Washington D. C. 20250-9410 or call (202) 720-5964 (voice or TDD) USDA is an equal opportunity provider and employer.

**Complaint - Exhibit D**
**Page 1 of 6**

27

**WSO-0440-04A (03-25-02)**                                         (Page 2 of 6)

   **Item 1.** All crops, annual and perennial, and other plant or farm or farm products now planted, growing or grown, or harvested or which are planted after this instrument is signed or otherwise become growing or harvested crops or other plant products, including, but not limited to, the crops and other plant products on the following described real estate:

| Farm(s) or other Real Estate *Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction from a Named Town or other Description |
|---|---|---|---|
| Ed and Cary Campbell | 240 | Yakima, WA | 16.8 Miles SW of Yakima |

Including all entitlements, benefits, and payments from all state and federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all peanut and tobacco poundage allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party;

**\*Owner shown in related Financing Statement, except if informed of ownership change show reputed new owner.**

WSO-0440-04A (03-25-02)                                                                    (Page 3 of 6)

Item 2. All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of **Washington**

| Line No. | Quantity | Kind | Manufacturer | Size and Type | Condition | manufac-ture | Serial or Motor No. |
|---|---|---|---|---|---|---|---|
| 001 | 1 | | | | | | |

Including the following described fixtures which are affixed or are to be affixed to real estate; as-extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows (include legal description of the land):

Complaint - Exhibit D
Page 3 of 6

29

WSO-0440-04A (03-25-02)                                                                                    (Page 4 of 6)

**Item 3.** All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s)   **Washington**

| Line No. | Quantity | Kind-Sex | Breed | Color | Weight, Ave.Wt. | Age | Brands or Other Identification |
|------|------|------|------|------|------|------|------|
| ----- | -------- | ---------------------- | -------------- | ------- | ------------- | -------------- | --------------------------- |
| 00 | | | | | | | |

WSO-0440-04A (03-25-02)                                                                    (Page 5 of 6)

**Item 4.** All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including, but not limited to the following:

Crops, livestock, supplies, other farm products, and farm and other equipment. All accounts, general intangibles, including, but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.

## III. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

**A.** Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable landlord's statutory liens, and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, Farm and Home Plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

**B.** Statements contained in Debtor's loan application(s) and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this instrument, is Debtor's complete legal name; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced, (2) comply with such farm and home management plans as may be agreed upon from time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a good and husbandlike manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party, (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this instrument, and (8) maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

**C.** Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured by this instrument, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of liens searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest, and (4) fees and other charges now or later required by regulations of the Farm Service Agency.

**D.** Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

**E.** Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this instrument; change that may affect this security interest or its perfection; and any event of default.

**F.** Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

**G.** All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the latest note and shall be secured by this instrument. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines

**H.** In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require, and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein, or to effectuate the rights granted to Secured Party herein

WSO-0440-04A (06-29-0 1)                                              (Page 6 of 6)

**IV. IT IS FURTHER AGREED THAT:**

   **A.** Until default Debtor may retain possession of the collateral.

   **B.** Default shall exist under this instrument if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this instrument or to observe or perform any covenants or agreements in this instrument or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. Upon any such default:

   1. Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note an any indebtedness secured by this instrument immediately due and payable, (b) enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and (c) exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quie enjoyment, merchantability, fitness or the like in any disposition of the collateral.

   2. Debtor (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.

   3. A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this instrument.

   **C.** Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Farm Service Agency, third to the satisfaction of indebtedness secured by this instrument, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any other obligations of Debtor owing to Secured Party, and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

   **D.** It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this instrument, no collateral covered by this instrument is or shall become realty or accessioned to other goods.

   **E.** Borrower agrees that the Secured Party will not be bound by any present or future State exemption laws. Borrower expressly waives

   **F.** Secured Party may comply with any applicable state or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

   **G.** This instrument is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this instrument.

   **H.** If any provision of this instrument is held invalid or unenforceable, it shall not affect any other provisions, but this instrument shall be construed as if it had never contained such invalid or unenforceable provision.

   **I.** The rights and privileges of Secured Party under this instrument shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this instrument are joint and several and shall bind personal representatives, heirs, successors, and assigns.

   **J.** If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

   **K.** SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

   **L.** Failure by the Secured Party to exercise any right-whether once or often-shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

_Alex J. Campbell_ _____ (SEAL)    _____ (SEAL)
(Debtor)      Alex J. Campbell          (Debtor)                                0

# EXHIBIT E

This form is available electronically.

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Public Burden Statements)

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
|---|---|---|
| (09-03-10) | Farm Service Agency | |

**SECURITY AGREEMENT**

1. **THIS SECURITY AGREEMENT,** dated *(a)*_____August 28, 2013_____ , is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*_____

  **ALEX JOSEPH CAMPBELL**

(Debtor), whose mailing address is (c)_____
  **5808 SUMMITVIEW AVE # 244A, YAKIMA, WA 98908-3095**

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _AJC_ Date _11/14/13_

**Complaint - Exhibit E**
**Page 1 of 7**

FSA-2028 (09-03-10)

RECEIVED
NOV - 5 2013
YAKIMA COUNTY FSA

Page 2 of 7

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| Alex Campbell | 13 | YAKIMA, WA | Sec 17 Township 12 Range 16 |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _A C_  Date _11/4/13_

**Complaint - Exhibit E**
**Page 2 of 7**

FSA-2028 (09-03-10)                                                                    Page 3 of 7

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other
items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all
replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located
in the State(s) of *(1)* ___Washington___ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor | Oliver | 1600 Model 16-3214 9433 Hrs | | | 130322-607 9433 |
| 2 | 1 | Baler | New Holland | 425 | | | 503847 |
| 3 | 1 | Grain Drill | John Deere | BA Model | | | 60090 |
| 4 | 1 | Swather | Hesston | 6650 14ft Head 3480 Hrs | | | 665-01251 |
| 5 | 1 | Tractor | Ford | 3000 5507 Hrs | | | C461309 |
| 6 | 1 | Culti/Packer | John Deere | 14ft | | | |
| 7 | 1 | Hay Rake | Massey Ferguson | M-25 PTO | | | 0006150 |
| 8 | 1 | Plow | International | 3 bottom Rollover | | | |
| 9 | 1 | Calf Squeeze Chute | Powder River | | | 2011 | |
| 10 | 4 | Pasture Harrows | | 5Ft | | | |
| 11 | 1 | Disc | International | 10ft | | | |
| 12 | 1 | Truck/W snow plow | Ford | F-350 7.3 Diesel 166,000 Miles | Good | 2000 | 1FTSW31F5YED23325 |
| 13 | 1 | Stock Trailer | Turnbow | 16ft | Poor | | D535TUD |
| 14 | 1 | Truck | GMC | 2500 6.1 Diesel 146,705 Miles | Poor | 1983 | 1GTCK24J3DF711833 |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or
timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _____ Date 11/4/13

**Complaint - Exhibit E**
**Page 3 of 7**

36

**FSA-2028** (09-03-10)

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*      Washington      :

| (2)<br>Line<br>No. | (3)<br>Quantity | (4)<br>Kind or Sex | (5)<br>Breed | (6)<br>Color | (7)<br>Weight | (8)<br>Age | (9)<br>Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 45 | Goats - Boer | Boer | Brown & White | | | |
| 2 | 3 | Goats - Boer - Bucks | Boer | Brown & White | | | |

RECEIVED

NOV - 5 2013

YAKIMA COUNTY FSA

Initial _AJC_  Date _11/4/13_

Complaint - Exhibit E
Page 4 of 7

FSA-2028 (09-03-10)                                                                                                  Page 5 of 7

(e)  All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

Crops, livestock, supplies, farm products, and farm and other equipment and those to be acquired in the future.  All accounts, general intangibles, including, but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.

### 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT :

(a)  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)  Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)  Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)  Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)  Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)  All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial __JC__    Date _11/9/13_

**Complaint - Exhibit E**
**Page 5 of 7**

FSA-2028 (09-03-10)

**4. IT IS FURTHER AGREED THAT :**

RECEIVED

NOV ~ 5 2013

(a)  Until default, Debtor may retain possession of the collateral.

(b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

   (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial ___AX___   Date ___11|4|13___

FSA-2028 (09-03-10)                                                                                       Page 7 of 7

(i)   The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j)   If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)   Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)   **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW .**

**5.  CERTIFICATION**

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements.  If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _Alex J. Campbell_____    6B. *(Date)* _11/4/13_
      ALEX JOSEPH CAMPBELL

_____          *(Date)* _____
Debtor

---

NOTE:   *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0238.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

---

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).*

*To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

# EXHIBIT F-1

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

Sandy Christensen 509-454-5746

**B. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

USDA – Farm Service Agency

1606 Perry Street, Suite A

Yakima  WA 98902 USA

Date of Filing : 09/03/2003
Time of Filing : 10:54:00 AM
File Number  : 2003-246-4340-6
Lapse Date  : 09/03/2018

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| CAMPBELL | ALEX | J | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 17740 AHTANUM ROAD | YAKIMA | WA | 98903 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | NONE ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME

OR   UNITED STATES of AMERICA acting through U.S. DEPARTMENT OF AGRICULTURE

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1606 PERRY STREET, SUITE A | YAKIMA | WA | 9890 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

Crops, livestock, supplies, farm products, and farm and other equipment.  All accounts, general intangibles, including, but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.

**5. ALTERNATIVE DESIGNATION [if applicable]:** ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

**6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable]   **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE] [optional]  ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

F1NE

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# EXHIBIT F-2

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Sandy Christensen 509-454-5746

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐ USDA - Farm Service Agency

1606 Perry Street, Suite A

Yakima  WA 98902 USA ⌐

**Date of Filing : 03/04/2008**
**Time of Filing : 09:10:00 AM**
**File Number   : 2008-064-2117-1**
**Lapse Date    : 09/03/2018**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b.  This FINANCING STATEMENT AMENDMENT is to be filed [for record] [or recorded] in the REAL ESTATE RECORDS. |
|---|---|
| 2003-246-4340-6 | ☐ |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor _or_ ☐ Secured Party of record.  Check only _one_ of these two boxes.
Also check _one_ of the following three boxes _and_ provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.    ☐ DELETE name:  Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any  ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only _one_ box.
Describe collateral ☐ deleted  or ☐ added,  or give entire ☐ restated collateral description,  or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor,  or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| United States of America acting through U.S. Department of Agriculture | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

F2NE

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

**Complaint - Exhibit F-2**
**Page 1 of 1**

PAGE 1 OF 1

**2008-064-2117-1**
**44**

# EXHIBIT F-3

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Sandy Christensen 509-454-5746

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Sandy Christensen 509-454-5746

Farm Service Agency

1606 Perry Street, Suite A

Yakima   WA 98902

Date of Filing : 06/24/2013
Time of Filing : 01:34:00 PM
File Number   : 2013-175-0432-2
Lapse Date    : 09/03/2018

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b.  This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 2003-246-4340-6 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor **or** ☐ Secured Party of record. Check only **one** of these two boxes.
Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only **one** box.
Describe collateral ☐ deleted  or ☐ added,  or  give entire ☐ restated collateral description,  or  describe collateral ☐ assigned.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor,  or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  United States of America acting through U.S. Department of Agriculture | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

2NE

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

**Complaint - Exhibit F-3**
**Page 1 of 1**

PAGE 1 OF 1

**2013-175-0432-2**

# EXHIBIT G



# Vehicle Certificate of Ownership (Title)

### Certificate Number
**1126909510**

| License number | Vehicle identification number (VIN) | Year | Make | Model | Style | Series/Body |
|---|---|---|---|---|---|---|
| **6504UQ** | **D535TUD** | **1978** | **TURNB** | | | **HRSE** |

| Date issued | Odometer miles | Odometer status | Fleet number | Equipment number | Fuel type |
|---|---|---|---|---|---|
| **09/26/2011** | **0000000** | **E** | | | |

| Use class | Scale weight | Gross weight | Vehicle color | Prior title state | Prior title number |
|---|---|---|---|---|---|
| **TLR** | **03025** | | | **WA** | **0817841704** |

Comments
**3000-1978**

Brands

Sale price $ _____

Date of sale _____

**Legal owner:** To release your interest, sign below, then give this title to the registered owner/transferee or send it to a vehicle licensing office with the proper fee. You may be liable to the registered owner/transferee for penalties if you do not release interest within 10 days after proper demand.

| Legal owner | Registered owner |
|---|---|
| **USDA-FARM SERVICE AGENCY** | **CAMPBELL,ALEX J** |
| **1606 PERRY STREET SUITE A** | **17740 AHTANUM RD** |
| **YAKIMA, WA 98902** | **YAKIMA, WA 98903** |

X
Signature of legal owner releases        Date
all interest in the vehicle described above

X
Signature of registered owner releases        Date
all interest in the vehicle described above

X
Signature of legal owner releases        Date
all interest in the vehicle described above

X
Signature of registered owner releases        Date
all interest in the vehicle described above

I certify that the records of the Department of Licensing
show the persons named hereon as registered owners and
legal owners of the vehicle described.

Director, Department of Licensing

Federal regulation and state law requires you to state the mileage in connection with the transfer of ownership.
Failure to complete this odometer statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ➡ _____ (no tenths)   Transfer date____/____/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

Signature of transferee/buyer
X

Signature of transferor/seller
X

PRINTED name of transferee/buyer

PRINTED name of transferor/seller

**Complaint - Exhibit G**
Address of transferee/buyer **Page 1 of 1**

Address of transferor/seller

*Assignment by registered owner*

*In a safe place  Any alteration or erasure voids this title*

48

# EXHIBIT H



# Vehicle Certificate of Ownership (Title)

**Certificate Number**
**1126909509**

| License number | Vehicle identification number (VIN) | Year | Make | Model | Style | Series/Body |
|---|---|---|---|---|---|---|
| +683338 | 1GTCK24J3DF711833 | 1983 | GMC | | | PU |

| Date issued | Odometer miles | Odometer status | Fleet number | Equipment number | Fuel type |
|---|---|---|---|---|---|
| 09/26/2011 | 0000000 | E | | | D |

| Use class | Scale weight | Gross weight | Vehicle color | Prior title state | Prior title number |
|---|---|---|---|---|---|
| FEX | 05640 | | WHITE | WA | 0817841706 |

Comments
**10375-1983**

Brands

Sale price $ _____

Date of sale _____

**Legal owner:** To release your interest, sign below, then give this title to the registered owner/transferee or send it to a vehicle licensing office with the proper fee. You may be liable to the registered owner/transferee for penalties if you do not release interest within 10 days after proper demand.

Legal owner
**USDA-FARM SERVICE AGENCY**
**1606 PERRY STREET SUITE A**
**YAKIMA, WA 98902**

Registered owner
**CAMPBELL,ALEX J**
**17740 AHTANUM RD**
**YAKIMA, WA 98903**

X

Signature of legal owner releases        Date
all interest in the vehicle described above

X

Signature of registered owner releases        Date
all interest in the vehicle described above

X

Signature of legal owner releases        Date
all interest in the vehicle described above

I certify that the records of the Department of Licensing
show the persons named hereon as registered owners and
legal owners of the vehicle described

X

Signature of registered owner releases        Date
all interest in the vehicle described above

Director, Department of Licensing

Federal regulation and state law requires you to state the mileage in connection with the transfer of ownership.
Failure to complete this odometer statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ➡ _____ (no tenths)    Transfer date____ / ____ / ____
                                                                                              Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

Signature of transferee/buyer
X

PRINTED name of transferee buyer

**Complaint - Exhibit H**
**Page 1 of 1**

Signature of transferor/seller
X

PRINTED name of transferor/seller

Address of transferor/seller

50

# EXHIBIT I

 **USDA**

| United States | Farm and Foreign | Farm | Yakima County Farm Service Agency |
|---|---|---|---|
| Department | Agricultural | Service | 1606 Perry Street, Suite A |
| of Agriculture | Services | Agency | Yakima, WA 98902-5769 |
| | | | Phone: 509-454-5743, Ext. 2 |
| | | | FAX:   855-843-1174 |

March 7, 2017

**CERTIFIED MAIL**
**7010 2780 0000 8568 7461**

Alex J. Campbell
5808 Summitview Ave. #244A
Yakima, WA 98908

### NOTICE OF INTENT TO FORECLOSE ON YOUR PROPERTY SERVING AS SECURITY FOR THE UNITED STATES OF AMERICA AND ACCELERATION OF YOUR LOAN ACCOUNTS

Dear Mr. Campbell:

The United States of America intends to enforce its (real estate mortgages, deeds of trust, security agreements, etc.) given or assumed by you as security for your loans. The security instruments referred to above as described below were perfected as follows:

| Security Instrument | Date | Recording Office | Recording Information |
|---|---|---|---|
| Real Estate Mortgage | June 25, 2013 | Yakima County Auditor | 7808421 |
| UCC-1 | September 3, 2003 | WA State Department of Licensing | 2003-246-4340-6 |
| UCC-1 Continuation | March 4, 2008 | WA State Department of Licensing | 2008-064-2117-1 |
| UCC-1 Continuation | June 24, 2013 | WA State Department of Licensing | 2013-175-0432-2 |
| UCC-2 Fixture Filing | June 26, 2013 | Yakima County Auditor | 7808422 |
| Security Agreement | September 1, 2003 | | |
| Security Agreement | October 27, 2003 | | |
| Security Agreement | September 26, 2007 | | |
| Security Agreement | August 10, 2011 | | |
| Security Agreement | February 27, 2012 | | |
| Security Agreement | August 28, 2013 | | |

The security instruments executed by you in favor of the UNITED STATES are not affected by a discharge in bankruptcy and the security can still be foreclosed upon or liquidated to satisfy the secured debt, although a discharge under the Bankruptcy Code does render any debt discharged unenforceable as your personal obligation. If the proceeds from the sale are not sufficient to pay off the debt, the UNITED STATES will not seek a personal judgment against you for any deficiency. This letter is not intended as an act to collect or recover any debt from you for which your personal obligation has been discharged, but rather is intended to inform you that the UNITED STATES intends to collect as much of the secured debt as possible from the property which serves as security for the loans made to you. In order to do so, it is necessary for your

USDA is an equal opportunity provider, employer and lender

**Complaint - Exhibit I**
**Page 1 of 4**

52

5-FLP, Exhibit 50

loans to be accelerated.  Therefore, pursuant to the terms of the debt instruments, the United
States is now exercising its option to declare your entire debt immediately due and payable.  **Any
Farm Loan Programs family living and farm operating expenses which you may be
receiving are hereby terminated.**

The reasons for taking this action are as follows:  Failure to make payments as agreed.

The debt instruments are described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note | June 25, 2013 | $18,350 |
| Promissory Note | June 25, 2013 | $177,500 |

The UNITED STATES will not file its foreclosure action or liquidate its security, under the
authority granted in the above-described instruments, for 30 days.  During that period, you may
purchase the property for the appraised market value.  If you wish to pursue this option, please
contact the Agency immediately.  Once a value is established, you will be given 30 days to remit
an amount equal to the appraised value less prior liens.

YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE
YOUR FSA DEBTS.

*UNITED STATES OF AMERICA*

*BY:*
District Director
Farm Service Agency
United States Department of Agriculture

Notice to Customers Presenting Checks
When you provide a check as payment, you authorize us either to use information from your check to make a one-
time electronic fund transfer from your account or to process the payment as a check transaction.  For inquiries,
please contact your local office.

Privacy Act – A privacy Act Statement required by 5.U.S.C. § 552a(e)(3) stating our authority for soliciting and
collecting the information from your check, and explaining the purposes and routine uses which will be made of
your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index.html ), or call
toll free at (1-866-945-7920) to obtain a copy by mail.  Furnishing the check information is voluntary, but a decision
not to do so may require you to make payment by some other method.



| United States | Farm and Foreign | Farm | Yakima County Farm Service Agency |
|---|---|---|---|
| Department | Agricultural | Service | 1606 Perry Street, Suite A |
| of Agriculture | Services | Agency | Yakima, WA 98902-5769 |
| | | | Phone: 509-454-5743, Ext. 2 |
| | | | FAX:    855-843-1174 |

March 7, 2017

**REGULAR MAIL**

Alex J. Campbell
5808 Summitview Ave. #244A
Yakima, WA 98908

### NOTICE OF INTENT TO FORECLOSE ON YOUR PROPERTY SERVING AS SECURITY FOR THE UNITED STATES OF AMERICA AND ACCELERATION OF YOUR LOAN ACCOUNTS

Dear Mr. Campbell:

The United States of America intends to enforce its (real estate mortgages, deeds of trust, security agreements, etc.) given or assumed by you as security for your loans.  The security instruments referred to above as described below were perfected as follows:

| Security Instrument | Date | Recording Office | Recording Information |
|---|---|---|---|
| Real Estate Mortgage | June 25, 2013 | Yakima County Auditor | 7808421 |
| UCC-1 | September 3, 2003 | WA State Department of Licensing | 2003-246-4340-6 |
| UCC-1 Continuation | March 4, 2008 | WA State Department of Licensing | 2008-064-2117-1 |
| UCC-1 Continuation | June 24, 2013 | WA State Department of Licensing | 2013-175-0432-2 |
| UCC-2 Fixture Filing | June 26, 2013 | Yakima County Auditor | 7808422 |
| Security Agreement | September 1, 2003 | | |
| Security Agreement | October 27, 2003 | | |
| Security Agreement | September 26, 2007 | | |
| Security Agreement | August 10, 2011 | | |
| Security Agreement | February 27, 2012 | | |
| Security Agreement | August 28, 2013 | | |

The security instruments executed by you in favor of the UNITED STATES are not affected by a discharge in bankruptcy and the security can still be foreclosed upon or liquidated to satisfy the secured debt, although a discharge under the Bankruptcy Code does render any debt discharged unenforceable as your personal obligation.  If the proceeds from the sale are not sufficient to pay off the debt, the UNITED STATES will not seek a personal judgment against you for any deficiency.  This letter is not intended as an act to collect or recover any debt from you for which your personal obligation has been discharged, but rather is intended to inform you that the UNITED STATES intends to collect as much of the secured debt as possible from the property which serves as security for the loans made to you.  In order to do so, it is necessary for your

USDA is an equal opportunity provider, employer and lender

5-FLP, Exhibit 50

loans to be accelerated. Therefore, pursuant to the terms of the debt instruments, the United States is now exercising its option to declare your entire debt immediately due and payable. **Any Farm Loan Programs family living and farm operating expenses which you may be receiving are hereby terminated.**

The reasons for taking this action are as follows: Failure to make payments as agreed.

The debt instruments are described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note | June 25, 2013 | $18,350 |
| Promissory Note | June 25, 2013 | $177,500 |

The UNITED STATES will not file its foreclosure action or liquidate its security, under the authority granted in the above-described instruments, for 30 days. During that period, you may purchase the property for the appraised market value. If you wish to pursue this option, please contact the Agency immediately. Once a value is established, you will be given 30 days to remit an amount equal to the appraised value less prior liens.

YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE YOUR FSA DEBTS.

*UNITED STATES OF AMERICA*

*BY:*

District Director
Farm Service Agency
United States Department of Agriculture

Notice to Customers Presenting Checks
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. For inquiries, please contact your local office.

Privacy Act -- A privacy Act Statement required by 5.U.S.C. § 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index.html ), or call toll free at (1-866-945-7920) to obtain a copy by mail. Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1   U.S. Government
       Plaintiff

❏ 3   Federal Question
       *(U.S. Government Not a Party)*

❏ 2   U.S. Government
       Defendant

❏ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | | 28 USC 157 | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ❏ 820 Copyrights | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 830 Patent | ❏ 470 Racketeer Influenced and |
| ❏ 152 Recovery of Defaulted | Liability | ❏ 368 Asbestos Personal | | ❏ 840 Trademark | Corrupt Organizations |
| Student Loans | ❏ 340 Marine | Injury Product | | | ❏ 480 Consumer Credit |
| (Excludes Veterans) | ❏ 345 Marine Product | Liability | | **LABOR** | ❏ 490 Cable/Sat TV |
| ❏ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ❏ 710 Fair Labor Standards | **SOCIAL SECURITY** | ❏ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | Act | ❏ 861 HIA (1395ff) | Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 862 Black Lung (923) | ❏ 890 Other Statutory Actions |
| ❏ 190 Other Contract | Product Liability | ❏ 380 Other Personal | Relations | ❏ 863 DIWC/DIWW (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Property Damage | ❏ 740 Railway Labor Act | ❏ 864 SSID Title XVI | ❏ 893 Environmental Matters |
| ❏ 196 Franchise | Injury | ❏ 385 Property Damage | ❏ 751 Family and Medical | ❏ 865 RSI (405(g)) | ❏ 895 Freedom of Information |
| | ❏ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ❏ 790 Other Labor Litigation | | ❏ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | ❏ 899 Administrative Procedure |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ❏ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | ❏ 950 Constitutionality of |
| ❏ 240 Torts to Land | ❏ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ❏ 245 Tort Product Liability | Accommodations | ❏ 530 General | | | |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other | ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

❏ 1   Original
       Proceeding

❏ 2   Removed from
       State Court

❏ 3   Remanded from
       Appellate Court

❏ 4   Reinstated or
       Reopened

❏ 5   Transferred from
       Another District
       *(specify)*

❏ 6   Multidistrict
       Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**     ❏ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____      DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
   United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
   United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
   Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
   Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the six boxes.
   Original Proceedings. (1) Cases which originate in the United States district courts.
   Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
   Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
   Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
   Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
   Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
   Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
   Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.